[PHILADELPHIA, JANUARY, 24, 1829.]

## FOX *against* WOOD.

### IN ERROR.

The officer who executes a warrant for the collection of militia fines, is not bound to know that the person on whom he is directed to execute it, is an exempt.

If the minutes of the proceedings of a Court of Appeals are lost, the substance of their contents may be proved. Consequently, a warrant proved to have been copied from the return of a Court of Appeals and compared with it, is competent evidence to be left to the jury.

To show that a Court of Appeals was regularly constituted, it is necessary to produce the commission of the officer, by whose order it was constituted and those of the officers who composed it.

WRIT of error to the District Court for the city and county of *Philadelphia,* in an action of trespass brought by *David C. Wood,* the defendant in error and plantiff below, against *George Fox,* the plaintiff in error and defendant below, who was a collector of militia fines, for an arrest and imprisonment of the plaintiff's person, as a delinquent militia man.

(Fox *v*. Wood.)

On the trial of the cause, the defendant, in pursuance of notice from the plaintiff, produced the original warrant under which he acted, signed by *George F. Hailer*, captain, and countersigned by *Robert Patterson*, colonel, dated the 2nd of *June*, 1820, authorizing the defendant to collect the fines from the persons named therein, among whom was the plaintiff; which was read in evidence by the plaintiff. The warrant was as follows:—

" The Commonwealth of Pennsylvania."

" To *George Fox* ———— greeting ————."

" Whereas the persons named in the schedule or list hereunto annexed, have, by the Court of Appeals of their proper battalion, been duly sentenced to pay the fines to their names respectively subjoined; this warrant, therefore, authorizes and requires you to demand and receive of all and each of the persons named in the said schedule, the amount of fines to their names respectively annexed: And in case of the refusal of all or any of them to pay the same, then to levy the said debt and costs, of the goods and chattels of all or any of the delinquents named in your schedule annexed, by distress and sale thereof, returning the overplus, if any, to the owner or owners respectively; but for want of such effects, then to take the body or bodies of such persons named in the said list repectively, to the jail of the county where the delinquents reside, there to be detained until the fine and costs shall be paid or satisfied, or he or they shall be otherwise legally discharged.—Witness my hand and seal this 30th day of *May*, 1820."

" Signed,"                          · *George F. Hailer.*
                                        Captain of the 5th company.

"Approved, *Robert Patterson*,
    Colonel of the 72d regt. P. M."

The defendant gave in evidence the commission of the said *George F. Hailer*, as captain of the 5th company, 72d regiment of *Pennsylvania* militia, and produced as a witness *Robert Patterson*, who proved that in *May*, 1820, he was colonel of the 72d regiment of *Pennsylvania* militia, and had in his possession the papers of the regiment and company; the returns to the Court of Appeals, and the returns made by the Court of Appeals: That he had searched for the papers on which the warrant was founded, but could not find them: That he had them and could only account for their absence by a belief that they were destroyed or thrown aside in consequence of the former counsel in the suit having told him the suit was stopped, and the matter settled: That the warrant is this case was in the handwriting of a former partner of the witness, who copied it from the return of the Court of Appeals, and that he and the witness had compared them together.

The defendant also gave in evidence the appointment of the Court of Appeals, as published in the *American Sentinel*, which colonel *Patterson* verified on oath.

(Fox *v.* Wood.)

The court below charged the jury that to justify the arrest, the defendant must prove that a Court of Appeals was held, consisting of three commissioned officers: That they were appointed by the colonel, and were under oath or affirmation to perform their duties faithfully and impartially, and that the only legal evidence of this was the proceedings or minutes of the Court of Appeals, regularly authenticated, and the commission of the officer appointing, and those of the officers composing the Court: That the defendant had failed to do this in every particular: That if the proceedings were lost or destroyed, it was his misfortune, and the plaintiff had a right to call for complete evidence of the authority by which he had been deprived of his liberty.

The court also charged that the defendant knew, or was bound to know, that the plaintiff was an exempt; and nothing but great carelessness, to say the least of it, could have produced the insertion of the plaintiff's name in the warrant on the part of the militia officers: That the defendant's proceedings were wholly unwarranted by law, and he could not shelter himself under the plea of obedience to his superiors: That he was bound to make out a complete justification, and the plaintiff was therefore entitled to damages.

To this opinion the counsel for the defendant excepted, and in this court assigned the following errors:

1. Because the warrant given in evidence by the defendant below, in pursuance of the call of the plaintiff, was a sufficient justification of the defendant under the circumstances of the case.

2. Because the court did not charge, that the proceedings of the Court of Appeals and the warrant founded thereon, were a legal justification of the defendant.

3. Because the court charged, that the defendant, a collector of militia fines, was bound to know, that the plaintiff was an exempt, although he was not a party to the proceedings of the court martial.

4. Because the court charged that if the proceedings of a court martial were lost, no secondary evidence could be given of them, and that all persons who acted under the authority of such proceedings must, after their loss, be treated as trespassers.

The cause was argued by *R. Randall* and *J. Randall*, for the plaintiff in error, who cited 1 *Wash. C. C. Rep.* 433. 3 *Serg. & Rawle*, 169. 4 *Serg. & Rawle*, 83. 2 *Starkie*, 156.

*D. P. Brown* and *Rawle*, for the defendant in error, cited 2 *Binn.* 209. 3 *Serg. & Rawle*, 369.

The opinion of the court was delivered by

Gibson, C. J.—Whether a court martial has jurisdiction of the person of an exempt, is I apprehend, not open to debate; it having been ruled during the last term of this court at *Chambersburg*, that the liability of the accused to military duty, is the foundation of the whole charge, and consequently that the adjudication of the court on this, as on every other fact necessary to be made out by the pro-

(Fox *v.* Wood.)

secutor, is conclusive where the same fact again comes into contro-
versy. The District Court, therefore, erred in charging that the officer
who executed the warrant, was bound to know that the plaintiff was
an exempt. There was also error in charging, as it seems to me
the court did, that if the minutes of the proceedings were lost, the
substance of their contents could not be proved by secondary evi-
dence; and although this might be immaterial, if secondary evi-
dence had in fact not been given, yet it would seem, that the war-
rant proved by Colonel *Patterson* to have been copied from the mi-
nutes, and afterwards compared with them, was competent evidence
to be left to the jury. There was, however, no error in any other
part of the charge. It was essentially necessary to show the autho-
rity of the officer by whose order the court was constituted, and of
the members by whom it was composed, and this, if disputed, could
be done only by producing their commissions. If the defendant
fail in this, there must be a verdict against him, for it is certain that
a warrant unsustained by the sentence of a court regularly consti-
tuted, affords no protection.

Huston, J., (after stating the facts and the charge of the court
below,) delivered the following opinion.

The requisites to constitute a legal court of appeals is correctly
set out in the first paragraph of the charge. This is not questioned.
The act is express, and a decision of this court in *Wilson* v.
*John,* 2 *Binn.* 209, had settled that this must be shown by the
collector when sued as a trespasser. The commission of the
officer appointing the court martial, of each of the officers compos-
ing it, and that they were sworn, must appear, or the defendant is
not justified. If any of the commissions are lost, the fact that they
existed, and their contents, may be proved. *Moore* v. *Houston,* 3
*Serg. & Rawle,* 191. But, in this case, no evidence was given or
offered, of the existence or loss of the commission of the colonel;
no evidence that he appointed the court of appeals; that it was com-
posed of commissioned officers; that they were sworn, or that they
met or acted. The want of all this is now alleged to be cured, be-
cause it would seem the defendant, after the plaintiff had made out
his case, handed him his warrant, and the plaintiff's counsel read it;
but it was no part of his case, and was the *sine qua non* of the de-
fendant's defence. There may be instances where the plaintiff, to
make out his own case, must read a deed, or book, or document;
and, it being part of his case, and without which he could not reco-
ver, he may be precluded from contradicting or denying it. The
rule is a strict one, and has some limitations not necessary to be
mentioned here; for this evidence was not necessary to the plain-
tiff's case. It would seem the jailer was reading his copy, (wholly
unnecessary,) and the defendant handed the original. I should be
sorry if the rights of parties depended on matters so trifling. This
case does not come within the rule, and it must be considered as it

(Fox *v.* Wood.)

was below, as really the defendant's evidence, and his sole pretence of defence.

The second error assigned is, because the court did not charge the jury, that the proceedings of the court of appeals and warrant were a legal justification of the defendant. Now, I have shown the court had no evidence, legal or illegal, that there ever was a court of appeals in that regiment.

The last error assigned, and it includes all the others, is, " because the court charged the jury, that *if* the proceedings of the court martial were lost, no secondary evidence could be given of them, and that the persons who acted under the authority of such proceedings, must, after their loss, be treated *as* trespassers."

In the first place, the court said no such thing. There was no secondary evidence offered of the appointment, commissions, oaths, or proceedings of the Court of Appeals, or of any part of them, except the schedule annexed to the warrant; and the judge did not say one word about secondary evidence in the cause. As none was offered, it was not in his mind. He does say, the only legal evidence is, as decided in 2 *Binn.* 209, and cites it. If secondary evidence had been offered, he must have decided on its admissibility first, and its effect afterwards. He says again, the plaintiff has a right to call for *complete evidence* of the authority by which he was deprived of his liberty. Now, complete evidence cannot mean more than legal evidence. The defendant having omitted to offer secondary evidence, after having proved the loss of some of the documents, omitted to prove, or to offer to prove, the contents of them; nay, even omitted to produce the commissions which were not stated to be lost, and then asks this court to infer, from the expressions of a judge, used as applicable to a total failure of proof, that he would have rejected proof of the contents of lost papers: in other words, to reverse on suspicion of what would have been decided, if certain matters had been offered.

But a matter was much argued, which is totally immaterial to the cause; viz. the third error, that the judge said the defendant was bound to know that the plaintiff was an exempt. I say totally immaterial; for, if the defendant were bound to show a regular Court of Appeals, and their proceedings, his defence fails instantly.

The legislature, on the subject of exempts, have been very explicit. As to their meaning I cannot doubt. In the act of 1816, the captain is to make two lists; one, of all persons liable to perform militia duty, and another, of persons who shall *decline* to be enrolled, &c.; which last are to be returned as *exempts.* Some disputes having arisen on the construction of the word *decline,* when the act of 1818 was passed, in which it is declared that they who shall *omit* or *decline* to be enrolled shall be considered as exempts, to remove all doubts, it is added, " and every person omitting, or declining to make a choice. shall be considered as an exempt." Two rolls are to

(Fox *v.* Wood.)

be made out, and one to be sent to the commissioners, who are to charge each exempt four dollars in addition to his county tax.

And it is further provided, that neither the commissioners, nor any other tribunal, shall exonerate such exempt; nor has he the right of appealing to any other tribunal, except the Court of Appeals of the regiment in which he resides. The county commissioners may, however, exonerate on a certificate produced to them by the exempt under the signature of the president of the Court of Appeals, and the commissioners were bound to procure such certificate to be produced, if necessary.

Why exempts were to be heard before the Court of Appeals is well known. All who omitted to procure themselves to be enrolled were set down as exempts, and their names sent to the commissioners. Some of these attended and mustered every day; and, on satisfying the Court of Appeals of this, they got a certificate, and were freed from paying the tax of four dollars. But, except for the purpose of exonerating them, the Court of Appeals had no more authority over an exempt, nor had their collector any more right to imprison an exempt, than a minister of the gospel or a judge of this court, who are totally exempted from all militia duty.

Our laws have provided for this class of citizens most carefully. There are people who speak disparagingly of those who will not bear arms. We have no right to do so, and I feel no disposition to do so. The legislature have made the law—it is our duty to enforce it. In my opinion, no officer, and no Court of Appeals, can touch an exempt without violating an express and plain law, and being a trespasser.

Although I did not agree to the decision at *Chambersburg,* it will, I think, be found to be the case not of an exempt, or one alleging himself to be so; but that of a man clearly within the jurisdiction of a Court of Appeals.

Judgment reversed, and a *venire facias de novo* awarded.