# John Y. Day and Thos. Gorsuch, *vs.* William Y. Day.

A party has the right to segregate any portion of the facts of a case from the whole body, and ask the instruction of the court upon them; it is for the other party, if he desires it, to ask the opinion of the court on the whole testimony.

A mittimus issued by a justice, directed the constable to take into his custody "the body of W. D., and him safely keep, to answer a charge of obstructing the navigation of Gunpowder river, until he shall be discharged by law." Held:

That this authorised the commitment for no other offence than the obstruction of the navigation of said river, and there was no error in the court's granting an instruction to that effect.

If it be conceded that a justice of the peace may *himself* make, or order by parol, an arrest for a misdemeanor committed *super visum*, yet it ought to appear *that at the time of the arrest* he acted, and *professed* to act, in his official capacity, and he ought to notify the party arrested of such fact.

The right to abate a public nuisance belongs to every citizen, yet it cannot be lawfully exerted if its exercise involves a breach of the peace; when such is the case, the party erecting the nuisance must be proceeded against legally, by a warrant regularly issued upon charge made on oath.

Adversary and exclusive use would be indispensable to a several right of fishery in navigable water of this State, if it be conceded such a right could be acquired by prescription.

The first section of the statute of 24 *George* 2, *ch.* 44, requiring notice to be given to justices of the peace before suit brought against them, is not in force in this State.

APPEAL from Baltimore county court.

This was an action of *trespass vi et armis,* instituted on the 28th of March 1848, by the appellee against the appellants, and two others, who were returned *non sunt,* to recover damages for an *assault* and *false imprisonment.*

The appellants appeared and pleaded:—1st. *Non cul.* 2nd. *Non cul infra annum.* 3rd. A plea of justification, averring that the defendant, Gorsuch, was a justice of the peace for Baltimore county, and had *view* of a nuisance committed by the plaintiff, in the obstruction of the navigation and fishery of Gunpowder river, and for this caused him to be arrested

Day and Gorsuch, vs. Day.

and committed, and that the plaintiff was afterwards presented by the grand jury of said county for the commission of said offence, and an indictment found against him, to which he had pleaded. Issue was joined on all these pleas. All errors in pleading were waived, and it was agreed that any evidence might be given on either side which would be admissible under any form of action or pleading, and that the defendant, Gorsuch, was a justice of the peace for Baltimore county at the time the arrest complained of was made.

*1st Exception.* The parties having offered the testimony set out in the opinion of this court, the defendant, Gorsuch, prayed an instruction, that if the jury find that he was a justice of the peace at the time, and acted, or claimed to act, in the execution of his office, then, inasmuch as the plaintiff had offered no evidence of notice of the cause of action having been given to him before the suing out of the writ, as provided by the statute of 24*th Geo.* 2, *ch.* 44, they must find for defendant. This prayer the court, (FRICK, C. J., and PURVIANCE, A. J.,) refused, and defendants excepted.

*2nd Exception.* The plaintiff then offered the *two* prayers stated in the opinion of this court, which were granted. The defendants then offered *thirteen* prayers, in substance as follows:

1st. Denies the plaintiff's right to recover, if Gorsuch saw him with his boat anchored in the river, and believed that this tended to obstruct navigation, and, acting in his official capacity, and on this belief, ordered the arrest and commitment.

2nd. That it was competent for Gorsuch, in his official capacity, to order the arrest by parol, if he saw the plaintiff obstructing the navigation of the river, and the defendant Day's right of fishing therein.

3rd. Justifies the arrest as aforesaid for the nuisance, and commitment upon refusal to enter into recognizance to appear and answer for the offence, if Gorsuch saw the offence committed in his view.

4th. Justifies the arrest under the circumstances stated in the preceding prayer.

5th. Justifies the arrest by Gorsuch as aforesaid, if the other defendants were attempting in a peaceable manner to abate the nuisance and the plaintiff violently resisted, and threatened a breach of the peace if they persisted, and Gorsuch saw the plaintiff erect the nuisance, resist its abatement, and heard him make the threats.

6th. Justifies the arrest as aforesaid, if Gorsuch was present and believed it was necessary in order to avoid a breach of the peace.

7th. Justifies the arrest as aforesaid, if it was necessary to the peaceable abatement of the nuisance.

8th. Justifies the acts of the defendant, Day, if the nuisance interfered with his right of fishery, and he did not use unnecessary force in abating the same.

9th. This prayer was abandoned.

10th. That the plaintiff cannot recover against Day, if the nuisance obstructed his right of fishery and he did nothing more than abate it.

11th. That there was no evidence that Day did anything on the occasion not necessary to the abatement of the nuisance, and which he had not a legal right to do.

12th. That if Day went for the purpose of abating the nuisance which obstructed his fishery, and while so doing the plaintiff commenced the affray, the latter cannot recover.

13th. Justifies the acts of Gorsuch, if the plaintiff, when arrested, as before stated, demanded no examination on the subject of the offence, produced no testimony, but declared his desire to go to jail, and refused to enter into recognizance for his appearance, to answer for the offence, and rejected Gorsuch's offer to become his surety therefor, the offence having been committed in the county of which Gorsuch was a justice.

The court rejected all of the defendants' prayers, to which refusal and to the granting of those of the plaintiff the defendants excepted. The verdict was for the plaintiff for $200 damages, and judgment accordingly, from which the defendants appealed.

The cause was argued before LE GRAND, C. J., ECCLE-
STON and MASON, J.

*Charles F. Mayer* for the appellant.

*1st Exception.* The statute of *24th Geo. 2, ch.* 44, is in force
in this State, and notice before suit, as required by it, not
having been given to the defendant, Gorsuch, of the cause of
action against him as a justice of the peace, he ought to have
had a verdict in his favor.   5 *Bac. Abr.,* 427.   *Kelty's Rep.
of Statutes,* 253.

*2nd Exception.* The first prayer of the plaintiff leaves out
the finding of *malice.*   If in the acts of a judicial officer malice
is wanting, there can be no action against him—if he acts
honestly, without malice, he is exempt from liability, though
he may have misjudged.   10 *Mass.,* 365.

The obstruction of a navigable river is a *nuisance*—an in-
dictable offence, (8 *G. & J.,* 510.   4 *Bl. Com.,* 167,) and the
only question is, whether a justice of the peace had the right
to take judicial notice of it and arrest the party?   In all cases
of offences committed *in the presence* of a justice, he has the
right to make the arrest.   1 *Chitty's Crim. Law,* 17, 74.   1
*Wilson,* 158.   2 *Hawk. Pleas of the Crown,* 133.   There may
be an informal commitment and still the *imprisonment be valid,*
especially where done without malice.   1 *Chitty's Crim. Law,*
109, 119.   The committing officer has the power to detain
the prisoner until the mittimus is made out.   7 *East,* 537.
2 *Hale's Pleas of the Crown,* 122.

The learned counsel also contended, that the appellant,
Day, had a several right of fishery in the river, and therefore
had a right to abate the nuisance thereto.

*Robert J. Brent* for the appellee.

*1st Exception.* Kelty, in his report of the statutes, says,
that the *first* section of the statute of *24th Geo.* 4, *ch.* 44, is
not in force in this State, and these reports the Court of Ap-
peals have said may be relied on.   5 *H. & J.,* 403.   But if
he acts from improper motives in a case where he has no

34     v.4

jurisdiction, no notice is necessary. 1 *Baldwin*, 602. But again, there is no statement in this exception that proof of Gorsuch being a justice was read to the jury, or notice to the plaintiff of his acting on the occasion as justice, which must be done. 1 *Russ. on Crimes*, 623. So far as he acted without affidavit or process he was not executing his office, but was a simple trespasser, and cannot by the subsequent issuing of process set up his special privilege as justice. 2 *Term Rep.*, 225, *Morgan vs. Hughes.* 1 *Baldwin*, 602.

*2nd Exception.* The first prayer of the plaintiff presents the construction of the warrant, and was rightly granted. A party has the right to segregate any portion of the evidence and ask an instruction upon it. 1 *Gill*, 143. Nothing could be more illegal and void than this commitment:—1st, it is based on no oath or complaint, and on no precedent warrant. 2nd, it requires the constable to keep the prisoner, and this is erroneous. *Latrobe's Justice*, sec. 1602. 3rd, it is in the nature of a final commitment in a case not bailable. *Latrobe's Justice*, sec. 1603.

The second prayer assumes that there is no evidence to justify the arrest of the plaintiff, because of his obstructing the fishing privileges of John Y. Day, or any one else, in Gunpowder river. Suppose he was obstructing the common right of fishery in a navigable river, this is but a nuisance, and to justify his arrest by a breach of the peace, and detention for *two hours* until the arrival of a constable, it must be shown that the erection of a nuisance in a navigable stream justifies all that was done by the defendants. A public nuisance may be abated, but not by a breach of the peace or riot. 3 *Bl. Com.*, 5. 9 *Rep.*, 55. Upon the ground of abating a supposed nuisance, there was no power to arrest the plaintiff and detain him, see same authorities, and also 2 *Strange*, 686. A nuisance is but a misdemeanor, and the party cannot be arrested for it without a warrant *founded on a charge.* 1 *Baldwin*, 602. 1 *Chitty's Gen. Pr.*, 618. 2 *Barn. and Cress.*, 699. 7 *Bing.*, 316, *Price vs. Severn.* 3 *Barn. and Adolph.*, 798, *Fox vs. Gaunt.* 5 *Car. and Payne*, 206, *Rex vs. Birnie.*

11 *Johns.*, 486, *Philips vs. Trull.* Before the plaintiff could be forcibly removed, there should have been a request to depart. 1 *Steph. N. P.,* 217. If this was a nuisance it was a public one, and the parties could not redress it by any private remedy. 8 *G. & J.,* 510, 511.

There is no evidence that John Y. Day had any *exclusive* right of fishery in this river, and there has been no decision in this State that he could acquire such a right in a navigable river.

The prayers of the defendants, besides being liable to special objections, were all in conflict with the plaintiff's prayers, which the court had granted, and therefore were properly rejected.

Le Grand, C. J., delivered the opinion of this court.

This action was instituted by the appellee, to recover damages for an assault and for false imprisonment. From the evidence it appeared, that William and John Day were the owners of adjoining fishing shores on the Gunpowder river, near its confluence with Bird river, and that the shore of William "had been immemorially used as a fishery," and that although John, "at one period," was in the habit of fishing higher up the stream, and in front of his own shore, the latter fishery ceasing to be advantageous, he shifted the range of his seine within the last three years preceding the institution of this suit, so as to carry it out in front of the shore of William; but, notwithstanding this common range for their seines, both fisheries could be conveniently carried on, it being easy to carry out the seine from one shore while that laid out from the other was drawing in; and that, so, this alternate use of the best fishing waters could be had by each party without interruption or delay. It also appeared, that while the seine of John was being laid out, William was anchored in his boat in the line which the seine of John would take, thus compelling an alteration of its intended direction. Evidence was also given that while the boat of William was so anchored, John, Gorsuch and others, in another boat, pushed out to

him, when a scuffle ensued, resulting in the capture of William and the bringing of him ashore. There was testimony to show that William commenced the struggle, and also that violence was first used by John. When William reached the shore he was committed by the defendant, Gorsuch, who had been present during the difficulty between William and John Day. That commitment was in these words:

"State of Maryland and Baltimore county. To William K. Swain, constable: Take into your custody the body of William Y. Day, and him safely keep, to answer a charge of obstructing the navigation of the waters of Gunpowder river, until he shall be discharged by law. Witness my hand and seal this 19th day of May 1847. Thomas Gorsuch, (Seal.)"

Two hours elapsed from the time of the capture of William Day until the delivery of this commitment to the constable. There is evidence in the record to show that Gorsuch urged him to give bail, offering to become it himself, and that the latter refused, as he did also a similar offer made by a friend in Baltimore city, preferring to go to jail, saying that the damages would be increased thereby. He remained in jail six hours, when he was discharged on his entering into a recognizance to answer at court.

There was a great deal of other testimony given, both by the appellants and the appellee; but the above statement is sufficiently full to present the questions which we are called upon to determine.

On behalf of the plaintiff, at the trial below, two instructions were asked of the court, which were given; and on behalf of the defendants thirteen, all of which were refused. The ninth prayer of the defendant has been abandoned.

Without recurring to the precise verbal structure of the prayers on behalf of the defendants, it may be said, that they are in direct conflict with the legal propositions contained in those submitted on the part of the plaintiff, and, as a consequence, if the latter were properly granted the others were rightfully refused.

The first prayer of the plaintiff merely asks the court to instruct the jury, that the commitment given in evidence authorised the commitment of William Day for no other offence than the obstruction of the navigation of the Gunpowder river. This is clearly the meaning of the mittimus, the charge being *specifically* set out in it, and the Court of Appeals, in the case of *Whiteford vs. Burckmyer and Adams.* 1 *Gill*, 143, have recognized the right of a party to segregate any portion of the facts of a case from the whole body and ask the instruction of the court on them. It is for the other party, if he desires it, to ask the opinion of the court on the whole testimony. We do not see how any other construction could have been given to the commitment, and therefore discover no error in this particular.

The second prayer of the plaintiff asserts the broad proposition, that there was no evidence of a legal authority to arrest him. This prayer covers the whole case, and is in direct opposition to each and every of the prayers asked on behalf of the defendants.

It is clear from all the testimony, that the plaintiff was arrested without warrant.

The undisputed evidence is, that the plaintiff had anchored his boat in the stream, and that the defendants went out to the place and there, after a scuffle, arrested and brought him to the shore. There is none whatever that he was, *at the time of the arrest*, notified Gorsuch was acting in the capacity of a justice of the peace; but even were it conceded a justice of the peace may *himself* make an arrest for a misdemeanor committed *super visum*, yet it ought to appear, for the future protection of the party arrested, that *at the time of the arrest* he acted, and professed to act, in his official capacity. Any other rule might enable a person in the commission to excuse his tortious acts under the plea of a mistake of judgment in the discharge of the judicial duties of his office. In the case now under consideration there is not the slightest evidence Gorsuch, at the time of the arrest, professed to act as a justice of the peace, nor is there any that he did so, nor that the

plaintiff had any knowledge of his being a justice, until the arrival of the constable, which did not happen *until two hours after the arrest had taken place.*

It is unquestionable, that if the act of the plaintiff in anchoring his boat in the stream was illegal, it was so simply because it was an interruption to the *public* right of navigation or of fishery, and, as such, punishable by indictment. The right to abate a public nuisance belongs to every citizen, yet it cannot be lawfully exerted if its exercise involve a breach of the peace. When such is the case, the party erecting the nuisance must be proceeded against legally; that is, a charge must be made on oath and a warrant regularly issued. In the case before us the attempt to remove the boat did, in fact, involve a breach of the peace. It brought about a scuffle in which violence was used on both sides. When such a state of things appeared to be the inevitable result of the attempt to remove the boat of the plaintiff, the defendants ought to have desisted and to have made complaint before the proper authority; or, if it were conceded, as we have before remarked, that a justice of the peace has the right on view to order an arrest by parol, and if Gorsuch assumed on this occasion to have acted in his official capacity, he should have notified the plaintiff of such fact.

We regard the capture of the plaintiff and his boat as but the act of parties assuming to abate what they considered a public nuisance, which they were not authorised to do if it could not be effected without a violation of the peace.

There is no evidence in the record as to the several right of fishery on the part of the plaintiff; and although it was discussed at the bar, we do not feel called upon to decide whether—in the absence of legislation to that effect—it is competent to a person by *prescription* to acquire a several right of piscary in any of the navigable waters of this State. There is nothing in the proof from which it could be properly inferred that the plaintiff, or those under whom he claimed, had exercised an *exclusive* right of fishery for a time sufficiently long to justify the presumption. The evidence only

goes to the extent of showing the right had been exercised immemorially, but not that it was *adversary* and *exclusive*, and, in any event, such adversary and exclusive use would be indispensable to a several right of fishery in a navigable water of this State. *Delaware and Maryland R. R. Co.*, *vs. Stump*, 8 *G. & J.*, 479.

The defence set up for the defendant, Gorsuch, under the first section of the act of Parliament of 24 *George* 2, *ch.* 44, cannot avail him, it not being in force in this State. Chancellor Kelty, in his report of British statutes, applicable to our condition, states the first section of this act not to be in force in this State; and this court, in the case of *Dashiell, et al., vs. Attorney General*, 5 *H. & J.*, 403, have said that the report "was compiled, printed and distributed under the sanction of the State for the use of its officers, and is a safe guide in exploring an otherwise dubious path."

For these reasons we affirm the judgment of the county court.

*Judgment affirmed.*